May it please the Court, my name is Steve Schutze and I represent Dignity Housing West and I'd like to reserve three minutes for rebuttal. In this insurance case, there are three principles which applied here demonstrate there are genuine issues of material fact that preclude summary judgment. First, under California law, when an insurance company has information that distinctly implies certain answers on an application are incomplete or inaccurate, they have a duty to make a further inquiry. If they ignore that duty, they waive the right to later rescind. Second, California courts have held that coverage clauses in insurance policies are broadly construed and its exclusions are narrowly construed and must be proven by the insurer. And third, if an insurance company is wrong on coverage, it breaches the implied covenant of good faith and fair dealing by failing to accept a reasonable settlement demand within policy limits. Here what we have in this case is the insurance company has argued that there was certain information that was not included on the application. Specifically, they have argued that there should have been other premises addresses that had apartment buildings identified on the application. But what we have in the record before this court is that during the underwriting process, the insurance company received a complaint which identified Dignity Housing as the owner of what's at 430 28th Street in Oakland and Harp Plaza at 430 28th Street, Oakland is an apartment building. So what the insurance company had in its possession, had it made any type of inquiry as to this complaint as to what is Harp Plaza, what's the nature of that business, why does that Harp Plaza have a management company? Any of those inquiries would have revealed the precise information which Attain now says that they was ground for rescission. May I ask you because we have this record that they made no inquiry. Excuse me, may I ask before we get to the question of rescission, there's sort of the antecedent question of whether this building was even covered by the policy at all. And I wanted to ask why, just looking at the face of the policy that says it's for building or premises, office, lists the office on 15th Street, makes no mention at all of this large multi-unit apartment building. Why would anyone looking at the policy think that this other building was covered? Well, first of all, this is a commercial general liability policy and the coverage territory is defined in the policy is for the United States. Then what you look at is to whether or not the policy language and that has to be construed against the insurer. There's a plain language limited only to that premises. And what we have is we have an endorsement, which is called the designated premises endorsements, a limitation. And what it says, it identifies that address, the 690 15th Street address. But in the fine print and the fine print actually is about eight font, says that it limits to the ownership, maintenance or use of the premises shown in the schedule, which is the address. And if they had stopped there in the policy, then what this court just asked, it would be limited to that address. But they didn't stop there. They added the words and operations necessary or incidental to those premises. And that's the key part of that. That's a reference back to the earlier part of the sentence to those premises. Correct. Correct. So you have to have a nexus to those premises. And what the case law says is if you can establish a nexus or a causal link to those premises, then you would have, there's at least a factual issue as to whether or not there's coverage. And the key term is incidental. And what you have in this record that we have, that Dignity submitted was that there were meetings that took place. There were the handyman worked at the premises. And so you have that causal connection in the record. And ultimately what we believe is it's a factual issue as to whether or not that the use of the other premises where the fire occurred was incidental to the use of the 690 15th Street location. How is that? I guess I don't understand how you're using the word incidental because I can see the argument that if you're running an apartment building, the office where you manage the building is necessary or incidental to the apartment building. I don't understand how the apartment building is necessary or incidental to an office. I mean, the office is an office. Yeah. Now, first of all, I want to pause there. There is no definition in the policy for necessary or incidental. And it's a requirement of the insurance company to define those terms. Well, but if they're not defined, we presumably would apply the ordinary meaning. Correct. You are correct. And you also look at a case law. And a case law, the cases that we have cited on that issue have indicated that and the Century 30 case was one of them where you had an actually a physical accident at another location. And the only causal connection was the fact that there was a safety manual at the designated premises, the premises that was in the identifying the policy. And they felt that was a sufficient causal connection. We've cited the case from the Fifth Circuit, which said which involved a Coke manufacturer in which there was a studio. And the only connection between the studio and the designated premises was the fact that the person who was accused of the wrongdoing in that case was supervised from the designated premises. And then we cited the Montana case, which held the same thing, that although in the office, the designated premises was in Utah and there was training and supervision and admission and promotion for the resort that took place in Montana, they felt that that was a sufficient causal connection nexus between the two locations. And what we have here and what we believe is a tribal issue of fact for a jury to decide is the precise question. What was this court just ask? Is that enough of a causal connection where you have meetings that take place, where you have supervision that takes place, where you have the person who is responsible for the maintenance of the apartment working out of that office? Is that enough of a causal connection to satisfy the incidental terms of the policy? And we believe that that's a factual issue for a trier fact to decide rather than as a matter of law. And what do you say to the suggestion that it's not really plausible? I mean, I think this is part of the other side's argument that it's not really plausible to believe that your client thought that it was getting a policy that covered its an unspecified number of other buildings. It could have been one apartment building. It could have been 100. And they were getting this all for $360 a month, a price that on the face of the policy was calculated based on the square footage of their office and not these indefinite number of unmentioned other buildings. Well, there's two answers to that question. First of all, I'm unaware of any case and there's certainly no cases before this court that says the amount charged in premiums by an insurance company controls as to the terms of the policy. It's really a moot point, particularly when we have in this case where they didn't do the investigation to fairly evaluate the risk. Second of all, we are limited to what the terms of the policy says. You can charge where an insurance company can charge any premium that they desire. It could be high, it could be low, it could be anywhere in between. But you have to look at the terms of the policy as to whether or not coverage is extended. And the terms of the policy is a commercial general liability policy, which extends everywhere in the United States. And then the question is whether or not there's an exclusion that limits it only to this particular premises. And the two exclusions which are argued that Attain primarily relies upon is the designated premises limitation, which uses the necessary or incidental language, which extends it beyond just the one location. And then the designated ongoing operation endorsement, which by its terms is not limited to one address. In fact, when on that on that indoor exclusion, they fail to include any type, any extends anywhere to which the insured seeks. Had they used a specific address on that exclusion, then they would have in fact limited. So they had actually two opportunities to do exactly what they claimed they wanted to do. They could have just stricken the words, the necessary or incidental words and not included that as part of the policy and just limited to the one address or on the endorsement or in the exclusion, the designated ongoing operations exclusions, they could have actually put the address of the location which they wanted to limit to. They didn't do either one of those. And because they didn't do either one of those, that means what liability was covered for an occurrence anywhere in the United States, which wasn't otherwise set forth and excluded in the policy. So that's how you get to the coverage. The what I anticipate you're going to hear is that, well, the designated ongoing operations was really intended to mean only that one location. But again, if you look at the fine print at the bottom, and this is from the record on page 395, if you look at the fine prints, it says it's only limited to a location if it's designated in the schedule of this endorsement. And since there's no address designated in the schedule of that endorsement, then you go to the sentence before, which says this exclusion applies regardless of where such operations are conducted, which would be anywhere. So they didn't effectively limit their own coverage to the one address when they had the opportunity to do so. And we are really confined by the language that they that attained put in its own policy, which is strictly construed against them or narrowly construed against them for purpose of of an exclusion. And with that, I'll reserve the balance of my time. OK, so let's hear from the other side. And you have saved some time. Good morning, Your Honor, my name is Gail Starkorder and I represent Attain Specialty Insurance Company. Just just to make one point, the premium was three hundred and sixty dollars for a year, not per month. And that is critical. And there is case law that says that the amount of premium paid is indicative of the type of coverage that is provided by the policy. And that's the Herzog versus National American Insurance Decision to Cal Third one ninety two. I'm starting with the exclusions and the policy first, the argument that dignity housing completely ignores and which they completely failed to respond to at the court below and in this court is the argument that, in fact, coverage is limited to the and the numerous decisions following the the reasoning in that case. What we have here is is an entity that, although it had numerous opportunities to do so, represented that it was seeking coverage for a two hundred square foot office space with one employee. And that's exactly what it thought. There were no surprises here. Dignity housing knew from day one that the only coverage it was going to be afforded under this general liability policy for which it paid three hundred and sixty dollars was limited to the premises designated first on the application and second on the declarations of the policy. The designated premises endorsement. Does limit coverage to those premises and you're correct, the terms necessary and incidental are given their plain meaning and I'm sorry, under under no stretch of the imagination, can the ownership and operation of two separate apartment buildings and serving as the master tenant and owner and operator of a third apartment building in any way be considered necessary or incidental to the running of a two thousand two hundred square foot office space? Incidental means secondary or minor, it doesn't mean major. Can I interrupt for just a minute? I'm looking at appendix page two, which sets the three hundred and sixty dollar premium. And I can't I'm trying to figure out because I had I had somehow, I guess, been under the you say it's per year is is the is the time period specified on this page or on some other page? Because I can't find the specification one way or the other. I have to find the appendix, but it's a it's an annual policy premium. OK, it's never a monthly premium. It says the policy runs for a year. 2016 to 930, 2017, and then the premium is just listed as three hundred ninety dollars. Yeah. So that would appear to cover the and if it is per month, I assume we'll hear we'll hear that from the other side pretty quick. OK, right. Yeah. No, it's an annual premium, Your Honor. OK, so back to the designated premises endorsement. If we follow Dignity Housing's argument to its logical conclusion, what it means is that any any business that owns more than one premise can walk into an insurance broker's office and say, I want to insure just my business office for three hundred and sixty dollars a year. But I I want it to cover all of my operations everywhere in the world, regardless of whether I disclose the true nature of my business. And that is simply not how insurance works. But in this case, Attain went a step further. Actually, it went several steps further. In addition to the designated premises endorsement, it included a designated operations endorsements, which clearly states that coverage is listed is provided only for the premises listed in the schedule. And in this instance, the schedule is the declarations, which only lists one one premises because that's the only premises that Dignity Housing told Attain existed. Had Dignity Housing indicated on the application that it also owned and operated three apartment buildings and had Attain known about that and wished then to limit the coverage only to the operations at the office building, then it would have could have listed the single premises to which it intended to confine coverage to. But here there was no reason to do so because it's only aware of one premise. Was the have excuse me for interrupt. I just I've been a little confused about the the about where the office is in relation to the other properties. Is the office in or adjacent to one of the buildings? The office is actually in one of the buildings that Dignity Housing owned, which again, they failed to disclose. They said they were a tenant in a space in a 200 square foot office space in the building. And they were they were a tenant, but they were they actually owned the building. So they're the owner of the building and the owner of the space. I mean. What we have here is Dignity Housing creating. A false a false scenario of what it does and what it's seeking coverage for and then turning around and demanding coverage for operations that first were never disclosed to Attain and second, which it knew from day one would never be covered by the policy because Attain was up front and indicated to them premises only at the 200 square foot office space and by the panoply of exclusions included in the policy, including the designated premises, the designated ongoing operations, the products completed operations, classification limitation, the fact that personal and advertising injury is eliminated from the coverage and the professional services coverage, how anyone in their right mind could expect that a policy for which they paid three hundred and sixty dollars to cover operations, the business development operations at a 200 square foot premises could somehow stretch to apply to an apartment building at least a mile away for operations that were never disclosed. That just that isn't right. That isn't the law and that isn't the intent of insurance. I think we've got your argument. Did you want me to address any of the issues on rescission? I, I don't I mean, again, the law is clear. They have the duty to disclose and what they're asking this court to do is to relieve them of their deception by placing the burden on Attain to investigate. And the information in the complaint does not under three thirty six distinctly imply or under Baca blatantly contradict all of the information in the application. The fact that they may have owned a building in 2012, 2013 or 2014 has nothing to do with what their operations are in October of 2016. And that's not an obvious lead requiring Attain's duty to defend duty to investigate. And contrary to counsel's assertion, where the facts, as in this case, are undisputed, the issue of whether Attain waived its right is a matter of law and the district court correctly determined Attain did not waive that right, that Dignity Housing made numerous misrepresentations on the application, continued to make those misrepresentations after the losses submitted to Attain and that it was within its rights to rescind the policy. The court also correctly determined that based on all of the information in policy, the application, the cost of the policy and the exclusions that this building simply was not covered. And I ask the court to affirm. Thank you. Isn't it correct that if we if we agree with you that there was no coverage, we don't reach the rescission issues? If you agree, there's no coverage that you don't have to reach rescission. OK, thank you. Thank you. Mr. Schutz, let me I understand that it's your position that the amount paid is not relevant. But I ask you nonetheless, is it $360 a month or $360 a year? No, it was the policy was for $750 or $720 a year. But the liability was $360 a year. It wasn't a month. So yeah, counsel for Attain was correct. It's per year. And and what I would like to point out is I think the rescission argument actually ties into the coverage argument. And the reason it does is because. The argument that you have heard from Attain and the argument they've made is that, well, we didn't we didn't have the information to evaluate the risk, so that's why we sent the premium the way we did. And the argument that that ties into that is they actually did have the information that that Dignity owned other property. They knew that information. They received the complaint. They received an email saying that they still had a management company. All that inferred that they they certainly owned other property and that they use that. And at what point did they get that information? Well, they received it during the application process, October 18th, 2016, before the policy was issued. But if I own a house and I'm insuring my car and in the process of applying for insurance for my car, I tell the insurance company they own a house. I don't I'm not insuring the house. True, but you would certainly know in order to evaluate the risk that that I told you that I owned a house and what Attain is arguing is that we didn't know they owned apartment buildings. And so therefore, we didn't factor that into the premium. But they did know. And and and what difference does it make? What difference does it make whether they knew that there were other property when the question is whether or not they were what the question is, what they were insuring? Correct. And if if the issue on the the rescission and the waiver, the rescission is they would have known that they were insuring issuing a commercial liability policy to a company that owned apartment buildings, and they would have been able to factor that in to the premium. And I want to comment on something that counsel for Attain said. We are really confined by the terms of the language. What what what we what we believe is the right mind or what they intended to do is not effectively limited to the single office address because of the terms they used in the policy under the designated premises endorsement, as well as the ongoing operations. OK. No, no. I think we get the argument. Thank thanks both sides for their argument. The case of Attain Specialty Insurance versus Dignity Housing West now submitted for decision. Thank thank both of you. Thank you for your honors.
judges: SCHROEDER, FLETCHER, MILLER